OPINION OF THE COURT
Donald P. DeRiggi, J.
Before the Court of Appeals decided the case of People v Hicks (98 NY2d 185 [2002]), the imposition of an enhanced sentence due to the untruthful statements of the defendant to the Probation Department was not an authorized practice. For instance, in People v Burns (279 AD2d 586 [2d Dept 2001]), the *978 Court held that the sentencing court was not authorized to unilaterally impose an enhanced sentence based upon its conclusion that in protesting his innocence during a presentence interview, the defendant violated a condition of his plea of guilty that he would fully cooperate with the Probation Department. In Burns (supra), the Court relied upon several other cases including People v Parker (271 AD2d 63 [4th Dept 2000]), People v Bradshaw (271 AD2d 63, 66 [4th Dept 2000]), People v Campbell (271 AD2d 63, 65 [4th Dept 2000]) and People v Seoud (271 AD2d 63, 67 [4th Dept 2000]).
In those four cases, the Fourth Department held that enhanced sentences were authorized following a plea, where the defendant violated the condition requiring no arrests between plea and sentencing, or did not timely appear for sentencing, or did not complete a drug rehabilitation program or did not attend scheduled Probation Department interviews. The Fourth Department found that those conditions had been expressly approved by the Courts and Legislature as the basis for enhanced sentences. It also found that those conditions were readily established based upon factual information provided to the Court. In the Parker case (supra), the defendant refused to discuss the offense with the probation officer; in Campbell (supra), the defendant told Probation that his lawyer did not help him; in Bradshaw (supra), the defendant initially lied to Probation about his commission of the crime and delayed getting a drug evaluation because he said that he could not afford to pay for it.
In People v Seoud (supra), the defendant, at his plea, acknowledged breaking into a house intending to steal money. He also agreed at the time of his plea that he was satisfied with the manner in which his attorney had represented him and that his plea agreement was not the product of force or threats. The Court, at the time of the plea, stated that the defendant’s sentencing commitment was conditioned upon him “telling the truth to the Court.” Following the plea and before the sentence, the defendant submitted an affidavit wherein he sought to withdraw his plea, indicating that his attorney had basically forced him to enter the plea of guilty and in the affidavit he professed his innocence. The sentencing court gave him an enhanced sentence but the Appellate Division, as it did in each of the previously noted cases, held that such enhanced sentence, based on a defendant’s statements to Probation was not approved by the Courts or the Legislature. The Court also held that the imposition of an enhanced sentence, due to the *979 untruthful statements made to Probation or the Court, would permit a court to depart from a negotiated sentence based upon its subjective interpretation of a defendant’s conduct rather than verifiable, factual information.
In conclusion, the Appellate Division, Fourth Department, wrote, in Seoud (supra at 70-71),
“Thus, we agree with the long-standing view of the Second Department that such conditions do not relate to the sentencing function of the court and that the violation of such conditions does not warrant additional punishment (see, People v Carr, 135 AD2d 722, 723; People v Daniels, 132 AD2d 667, 668; People v Brunson, 131 AD2d 689, 690; see also, People v Gerena, 219 AD2d 734, 735; People v Stennett, 207 AD2d 847, 848; People v Raffaele, 199 AD2d 545) * * *
“We disapprove of the enhancement of these sentences, therefore, not merely to protect the expectations of these defendants but to maintain confidence in the plea bargaining process itself.”
It can be reasonably argued however that the above concepts have been altered by the Court of Appeals in its decision in the Hicks case (supra). In that case, the defendant pleaded guilty to two counts of rape in the first degree and was promised a sentence of 3 to 6 years on each count to run consecutively with each other. At the time of the plea, the court instructed the defendant and the defendant agreed that he would “truthfully answer all questions asked of [him] by the Court [and] * * * the Probation Department” (at 187). The defendant was further notified that if he violated that condition, the sentencing court was not bound by its promise with respect to sentence and an enhanced sentence could be forthcoming. The defendant admitted to the court that he had sexual intercourse with the two children involved. During his interview with Probation however, he denied his guilt. He said he never touched either of the children. The trial court gave him enhanced sentences of 10 to 20 years on each count to run consecutively with each other. The Appellate Division reversed the convictions citing inter alia People v Parker (supra; People v Burns, supra).
The Court of Appeals reversed the decision of the Appellate Division and remanded the case to them for imposition of sentence consistent with its ruling. Among the things stated by the Court in its decision are the following: “Conditions agreed upon as part of a plea bargain are generally enforceable, unless violative of a statute or public policy * * * A sentencing promise in conjunction with a plea is conditioned upon its *980 being lawful and appropriate in light of the presentence report or information obtained from other reliable sources.” (Supra at 188 [internal quotation marks omitted].)
The Court went on to discuss the importance of the presentence investigation. It stated, “The investigation supporting the presentence report includes the gathering of a wide variety of information — including a criminal, social, employment, family, economic, educational and personal history of the defendant; information with respect to the circumstances attending the commission of the offense; and other information that the court directs to be included or is otherwise deemed relevant to the question of sentence.” (Supra at 188-189 [internal quotation marks omitted].)
The Court went on to state that several considerations supported the Court’s enhancement of the defendant’s sentence. It held that there was nothing subjective about the particular issue in the case. The court’s condition was explicit, objective and accepted by the defendant and concededly breached. The Court of Appeals further stated that the “[sjentence enhancement based on defendant’s violation of the condition, moreover, did not violate any statute or public policy. The defendant’s failure to answer the Probation Department truthfully about his crime hindered the preparation of an accurate report for the court’s use at sentencing. Finally, as the sentencing court noted, the acceptance of responsibility for a sexual offense is a step towards rehabilitation * * * In short, the result we reach in this case is premised on the nature of the defendant’s breached promise and its pertinence to his sentence. Accordingly, the order of the Appellate Division * * * [is] reversed and the case [is] remitted to the [Appellate Division].” (Supra at 189.)
Thus, Hicks (supra) places a new perspective on enhanced sentencing based upon untruthful statements made by a defendant to the Probation Department and gives those sentences an approved legal basis.
In this case, the defendant pleaded guilty to the amended and reduced charge of manslaughter in the first degree under Penal Law § 125.20 (2). During the plea, the defendant stated that no one had threatened or in any way forced him to plead guilty and that he was doing so of his own free will. (At 13.)* The defendant further withdrew any and all defenses and *981 motions previously submitted. Those included a withdrawal of the defense of justification and insanity (at 15, 16). When asked what he did concerning the homicide on October 3, 2001, the defendant stated, “I killed Jawad Wassell on October 3, 2001, by striking him with a pool cue and stabbing him, intending to cause his death thereby.”
“The Court: You intended to kill him and you did kill him, correct?
“The Defendant: Yes.” (At 19.)
At page 20 of the transcript, the court stated as a condition of its commitment the following:
“I am further advising you sir that as a condition of this plea of the following: That between now and the sentence date, if you fail to cooperate with Probation, or if you give untruthful answers to the questions asked of you by Probation, or if you are validly arrested and charged with a new crime, any commitment which I have given may be withdrawn by me and I may sentence you to the fullest extend of the law which is 25 years in jail and you will not be permitted to withdraw your plea of guilty on those grounds. Do you understand what I said?
“The Defendant: You would withdraw?
“The Court: Excuse me?
“The Defendant: I don’t understand, no.
“The Court: I will repeat it; if between now and sentence date you fail to cooperate with Probation or if you give untruthful answers to the questions asked of you by Probation or if you are validly arrested and charged with a new crime and Probation is going to interview; do you understand?
“The Defendant: Yes.
“The Court: And they are going to ask you questions; Do you understand that?
“The Defendant: Yes.
“The Court: They are going to ask you what happened on October 3, and October 4, do you understand?
“The Defendant: Yes.
“The Court: And you just told me under oath what happened, right?
“The Defendant: Yes.
“The Court: So if you tell them something different, you will not be telling them the truth, correct?
“The Defendant: I understand, yes.
*982 “The Court: So if that happens, or if you are validly arrested and charged with a new crime, any commitment that I have given, may be withdrawn by me and I may sentence you to the fullest extent under the law, which in your case is twenty-five years in jail and you will not be permitted to withdraw you[r] plea of guilty on those grounds, do you understand?
“The Defendant: Yes.
“The Court: If you have any questions, you know, ask your lawyer now at this time. Do you need any time to discuss anything with him?
“The Defendant: I have just one question.
“The Court: Go ahead (counsel and client are conferring), whereupon the Defendant and Mr. Liotti confer.
“The Court: Okay counsel and his client have conferred. Any questions?
“The Defendant: No.
“The Court: Okay do you understand everything that has happened here?
“The Defendant: Yes.” (At 21, 22.)
During his interview by Probation, the defendant gave a version of the events which would justify his taking the deceased’s life. On page 5 of the report he is quoted as having said that the victim told the defendant that he would reduce the defendant’s share of the money proceeds from the film and that the victim then threatened the defendant’s family. The defendant then said that he then pushed the victim and the victim then punched the defendant in the face. The defendant said the victim grabbed a machete and came at the defendant and that he, the defendant, hit the victim with a cue stick, the victim fell and whereupon the defendant stabbed him with a knife and continuously hit him with the cue stick and then stabbed the victim again. The defendant went on to tell Probation that had it not been for the availability of the cue stick, he, the defendant, would have been dead.
During the interview with the probation officer, the defendant also said that he pleaded guilty because he did not feel he could receive a fair trial with the judge whom he felt was biased against his attorney.
It should also be noted that the defendant’s written and signed statement to the police, dated October 3, 2001, states that following the victim’s notification to the defendant that his share from the proceeds of the movies was going to be reduced by 10% and following the victim’s threat to the defen *983 dant involving his family, the defendant pushed the victim. The victim then punched the defendant in the head, whereupon the defendant hit the victim in the head with a pool stick, the victim fell, and the defendant stabbed the victim to death. There is no mention of a machete.
It is this court’s opinion that, based upon Hicks (supra), an enhanced sentence is warranted. At the time of the plea, the defendant was clearly told that if he gave untruthful statements to Probation he would receive an enhanced sentence and the defendant made it known that he understood.
At the time of the plea the defendant said that no one had threatened or forced him in any way to take the plea yet he told Probation that he only pleaded guilty because he felt that he could not get a fair trial because the judge was biased against his lawyer.
The defendant then proceeded, at the time of the plea, to state that he intentionally killed the victim. The plea process obviously was one wherein the defendant acknowledged violating the laws and statutes of the state and pleaded guilty to committing a criminal act. The version that the defendant gave to Probation does not constitute his acknowledgment of having committed a criminal act. He clearly states to Probation that he acted in self-defense and that if he did not so act, the victim would have killed him, the defendant.
Certainly the defendant’s statement to Probation violates the clearly annunciated condition of the plea commitment. It must be assumed that when he pleaded guilty under oath, the defendant then and there told the court the truth. Therefore, what he told Probation was not the truth.
Further, there are no subjective evaluations present. The defendant told the court under oath that he unlawfully killed the victim and he told Probation that he lawfully killed the victim. As in Hicks (supra), the defendant’s failure to answer the Probation Department truthfully about his crime hindered the preparation of an accurate report for the court’s use at sentencing and, as the Court of Appeals stated, the acceptance of responsibility for the homicide would have been a step toward rehabilitation. This did not occur. Therefore, the nature of the defendant’s breach of promise and its pertinence to the sentence authorizes and justifies the enhanced sentence of 25 years.

 References are to the page numbers of the minutes of plea of June 4, 2003.